IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

BARRY W. BROWN,

                 Petitioner,

      vs.                              **Case No. 09-3002-RDR**

JAMES W. GRAY, Commandant,
USDB-Fort Leavenworth,

                 Respondent.

_____

### MEMORANDUM AND ORDER

Petitioner is a former United States Air Force member who is incarcerated at the United States Disciplinary Barracks at Fort Leavenworth, Kansas. This case is before the court upon petitioner's <u>pro se</u> action for habeas corpus relief pursuant to 28 U.S.C. § 2241. Upon review of the materials before the court, the court shall deny the petition.

I.  CASE HISTORY

Petitioner is a smart attorney who was a member of the judge advocate corps. On or about September 13, 2005, pursuant to a pretrial agreement, petitioner pleaded guilty to attempted premeditated murder and conspiracy to commit premeditated murder. Irene B. Brown, petitioner's wife, was the alleged intended victim of these crimes. She is also an attorney and has attempted to help petitioner during his appeals and applications for clemency.

During his marriage to Irene Brown, petitioner began a romantic relationship with Ramona Greiner, a staff sergeant who was

a paralegal.  Greiner sought the assistance of one of Greiner's friends, Gregory Williams, to have Irene Brown killed.  Mr. Williams reported this contact to the U.S. Air Force Office of Special Investigations.  Petitioner met with Williams on March 25, 2005 in a park.  Law enforcement made an audio and video recording of the meeting.  During the plea proceedings, petitioner stipulated to the following description of the meeting:

> On Friday, 25 March 2005, Mr. Williams waited at a picnic table at the meet location in Martin Luther King Park in San Antonio, Texas.  At approximately 1200 hours, SSgt Greiner arrived at the park, driving a white Chevrolet Avalanche pickup truck, followed by Captain Brown, driving a blue Dodge pickup.  SSgt Greiner introduced Captain Brown and Mr. Williams and departed the park in her vehicle.  Mr. Williams and Captain Brown then sat at a picnic table and discussed the murder of his wife, Mrs. Irene Brown.  Captain Brown suggested a methodology of firing indiscriminately at Mrs. Irene Brown's workplace.  Captain Brown provided Mr. Williams with pictures to identify Mrs. Brown as well as pictures of her vehicle and workplace.  Captain Brown identified the entry and exit door to Child Protective Services.  He paid Mr. Williams $280 as an initial down payment for the murder, and finalized the price of $25,000 for the murder of Mrs. Irene Brown.  Both a visual and audio recording of this meeting was made. (Prosecution Exhibit 12) The audio recording was subsequently transcribed. (Prosecution Exhibit 13).

AR000248.

> During the plea proceedings petitioner stated:

> I admit that I took steps to attempt to kill my wife, Irene.
> On 25 March 2005, I met with an individual I now know as Gregory Williams at the Martin Luther King Park in San Antonio, Texas.  Days prior to the meeting, I had taken pictures of Irene's car and of her workplace. . . . During the meeting, I gave . . . pictures to Mr. Williams and discussed with Mr. Williams the killing of

2

> my wife.   I suggested one method of firing a gun at
> Irene's workplace.
>    Mr. Williams and I agreed on a sum of $25,000 for
> the killing of Irene, and discussed my paying him over
> time.  At the meeting, I gave Mr. Williams $280 as a down
> payment.
>    My actions in attempting to kill Irene were
> completely devoid of any justification or excuse.   In
> addition, my actions were more than mere preparation.
> They were a substantial step and a direct movement toward
> the unlawful killing of my wife.

AR 000034.  Petitioner denied that he was under any duress at the time and professed that the decision to attempt to kill his wife was the mutual decision of petitioner and Greiner.  AR 000036.

When he entered his guilty pleas, petitioner waived his right to proceed before a panel of officers and consented to the case being heard by a single judge.  AR 000250.  Petitioner stated that he was satisfied with both of his trial counsel.  AR 000094.  He was aware that, pursuant to the pretrial agreement, his sentence would be 18 years or the sentence imposed by the presiding judge, whichever was less.  AR 000092-93.  He was also aware that the maximum sentence was life without parole.  AR 000076.  During the proceedings, the government stated that it would not argue that a mandatory minimum life sentence applied to the crimes alleged against petitioner.  AR 000009.  Immediately before petitioner was sentenced, the court announced that no mandatory minimum punishment applied to the crimes of conviction.  AR 000225-26.  Petitioner was aware that he could withdraw his pleas of guilty at any time prior to the imposition of sentence.  AR 000087.  Petitioner did not

withdraw his guilty pleas prior to being sentenced.

During the sentencing proceedings, petitioner and his counsel were asked if petitioner had been punished in any way prior to trial that would constitute illegal pretrial punishment. Petitioner's counsel answered "no" and petitioner agreed with his counsel's response. AR 000097. On September 14, 2005, petitioner was sentenced to a term of 25 years confinement. In January 2006, this sentence was reduced by the convening authority to 18 years in accordance with the pretrial agreement of the parties. Petitioner's request for a further reduction of sentence via an order of clemency was denied.

Petitioner's appeal to the Air Force Court of Criminal Appeals (AFCCA) was denied on April 28, 2008, approximately 27 months after the action of the convening authority. Petitioner then appealed to the Court of Appeals for the Armed Forces (CAAF). That court denied petitioner's request for review on November 13, 2008.

II. HABEAS STANDARDS

Habeas corpus relief can be granted under § 2241 to a federal prisoner who demonstrates he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The court has limited authority to review court-martial proceedings for such error. Our scope of review is initially limited to determining whether the claims raised by the petitioner were given full and fair consideration by the military courts.

Lips v. Commandant, United States Disciplinary Barracks, 997 F.2d 808, 811 (10th Cir. 1993), cert. denied, 510 U.S. 1091 (1994).  If the issues have been given full and fair consideration in the military courts, the district court should not reach the merits and should deny the petition.  Id.  When a military court decision has dealt fully and fairly with an allegation raised in a federal habeas petition, it is not open to the federal court to grant the writ by reassessing the evidentiary determinations.  Burns v. Wilson, 346 U.S. 137, 142 (1953).  As the Supreme Court stated:

> [I]t is not the duty of the civil courts simply . . . to re-examine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for habeas corpus. It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims.

Id. at 144.

A four-factor test aids the court in deciding whether the merits of a military habeas claim have been fully and fairly considered by the military courts.  These factors are:  1) whether the asserted error is of substantial constitutional dimension; 2) whether the issue is one of law rather than of disputed fact already determined by the military tribunals; 3) whether military considerations may warrant different treatment of constitutional claims; and 4) whether the military courts gave adequate consideration to the issues involved and applied proper legal standards.  Roberts v. Callahan, 321 F.3d 994, 996-97 (10th Cir.

5

2003).  The Tenth Circuit has recently emphasized that the fourth
factor is the most important consideration in this analysis.
Thomas v. U.S. Disciplinary Barracks, 625 F.3d 667, 670-71 (10th
Cir. 2010) cert. denied, 131 S.Ct. 1711 (2011).

An issue may be deemed to have been given "full and fair
consideration" when it has been briefed and argued, even if the
military court summarily disposes of the matter.  Watson v.
McCotter, 782 F.2d 143, 145 (10th Cir.), cert. denied, 476 U.S. 1184
(1986).  The fact that the military court did not specifically
address the issue in a written opinion is not controlling.  Lips,
997 F.2d at 821, n. 2.  Instead, "when an issue is briefed and
argued" before a military court, the Tenth Circuit has "held that
the military tribunal has given the claim fair consideration, even
though its opinion summarily disposed of the issue with the mere
statement that it did not find the issue meritorious or requiring
discussion."  Id., citing Watson, 782 F.2d at 145.  The burden is
on the petitioner to show that the military review was "legally
inadequate" to resolve his claims.  Watson, 782 F.2d at 144, citing
Burns, 346 U.S. at 146.  Without such a showing, the federal court
cannot reach the merits.  Id.

III.  ISSUES RAISED BY PETITIONER FOR HABEAS REVIEW

Petitioner's petition for habeas relief, Doc. No. 1, raises
the following issues:

1) Denial of petitioner's due process rights to speedy post-
trial review.  Petitioner alleges that the delay caused petitioner

6

prejudice by making witnesses and evidence unavailable or inaccessible for later proceedings.

2) Ineffective assistance of counsel in the following respects:

- counsel failed to seek sentencing credit for pretrial punishment;
- counsel failed to adequately prepare for trial;
- counsel failed to assert petitioner's speedy trial rights;
- counsel failed to afford petitioner an opportunity to assist in his defense;
- counsel failed to effectively cross-examine witnesses;
- counsel failed to interview witnesses and gather evidence helpful to petitioner;
- counsel failed to seek a pretrial ruling regarding the possibility of a mandatory minimum life sentence;
- counsel failed to provide petitioner with necessary information to make an informed plea;
- counsel failed to request the prospective panel members be sequestered.

3) Denial of fair trial by failing to sequester prospective panel members.

4) Prosecutorial misconduct in the following respects:

- proceeding with charges not supported by probable cause; and
- by blocking petitioner and his wife from communicating.

5) Denial of post-trial due process because the annual clemency recommendation board at the U.S. Disciplinary Barracks failed to consider petitioner's submissions and failed to include a letter from petitioner's wife in the materials sent to the Air Force Clemency and Parole Board.

6) Denial of speedy trial.

7) Improvident guilty plea because petitioner was incorrectly informed that he faced a possible mandatory minimum life sentence and petitioner was unaware of evidence which would have negated his guilt.

Petitioner's traverse in support of his petition on occasion seeks to expand upon these issues in a manner which raises claims which were not made before the military courts.  For instance, petitioner argues in his traverse that his plea was improvident because he lacked information regarding the accumulation of good conduct time and the existence of a mandatory supervised release program.  Doc. No. 13 at p. 71.  The court will not review claims which petitioner could have raised but did not raise before the military courts.  <u>Watson</u>, 782 F.2d at 145.

IV.  FULL AND FAIR CONSIDERATION

    A.  <u>Petitioner's argument</u>

Petitioner argues that the military courts did not give full and fair consideration to his arguments.  While petitioner addresses all four factors mentioned above, his primary contention is that, though the military courts addressed the legal arguments raised on appeal, they did not review the entire factual record supporting his legal claims before reaching a decision.  Petitioner contends:

> While it is accurate to say the AFCCA over and again provided *extensive* legal analysis supporting its decisions, that analysis can hardly be viewed as either *full* or *fair* where the court ignored the only brief and argument submitted for Petitioner.

Doc. No. 13 at p. 17.  The brief which was overlooked, according to petitioner, is a brief which he completed <u>after</u> the AFCCA issued a decision on April 23, 2008 affirming his convictions and sentence.

Petitioner concedes that the AFCCA entered his brief and supporting evidentiary documents into the appellate record when petitioner so moved and asked for reconsideration of the AFCCA's decision affirming his convictions and sentence.  Doc. No. 13 at p. 16. Nevertheless, he claims that the military courts' analysis "was made in absence of a vast amount of evidence." Doc. No. 13 at p. 17.

As already noted, on April 23, 2008 the AFCCA issued its decision affirming petitioner's convictions and sentence. Petitioner claims that he did not receive a copy of the decision until May 29, 2008.  On June 5, 2008, petitioner filed a motion for reconsideration and to file an untimely reply to the government's answer to the assignments of error.  Petitioner submitted his intended reply brief and supporting materials with this motion. The AFCCA granted petitioner's motion to submit his materials on June 13, 2008, but denied the motion for reconsideration on June 18, 2008.  The court stated:  "Having considered all of the matters submitted by the appellant, both in connection with the asserted assignments of error and the motions granted above, the appellant's request for reconsideration is hereby **DENIED."**  AR 000353.

The CAAF was the next stop for petitioner's military appeals. Petitioner asked for review of the AFCCA's decision based upon the arguments he raised before the AFCCA.  Petitioner's attorneys explicitly referred the CAAF to petitioner's reply brief and

9

accompanying materials.  AR 000635-36, 000644, 000654, 000658, 000661.  Nevertheless, the CAAF denied review.  AR000579.

B.  Analysis

As previously stated, petitioner contends that the military courts did not give full and fair consideration to his claims because the AFCCA did not give attention to his brief and supporting materials which were submitted to the AFCCA as part of a request for reconsideration of its decision.[1]  We reject this contention for the following reasons.

First, the AFCCA explicitly stated when it denied the motion for reconsideration that it considered all the matters submitted by petitioner.  See Armann v. McKean, 549 F.3d 279 (3rd Cir. 2008) cert. denied, 130 S.Ct. 77 (2009) (finding full and fair consideration of an argument presented only to the CAAF and summarily denied upon review).  Second, the court will not presume that the AFCCA ignored the record before it prior to making its decision to deny petitioner's motion for reconsideration.  Id. at 295-96; Thomas, 625 F.3d at 672.  There is a presumption of regularity that applies to the operation of court systems.  See Parke v. Raley, 506 U.S. 20, 30 (1992) (refusing to presume that

---

[1] Petitioner could have argued to the CAAF that the AFCCA did not actually consider his reply brief and supporting materials. Petitioner did not do so.  Thus, it is arguable that petitioner has waived his claim that the AFCCA did not give full and fair consideration to the entire record in this case.  See Watson, 782 F.2d at 145.  We do not reach this point.

constitutional rights were not validly waived simply because a transcript of a waiver was unavailable); <u>Venson v. State of Georgia</u>, 74 F.3d 1140, 1146 (11th Cir. 1996) (court must assume that trial court found manifest necessity existed for a mistrial whether or not the record affirmatively reflects such a finding). Thus, on habeas review, the court may rely upon a statement in the record that a court considered evidence before making a decision. <u>Lopez v. Ryan</u>, 630 F.3d 1198, 1202-04 (9th Cir. 2011) (court accepts state court's statement that it considered all mitigating evidence and found it wanting in spite of some state case law limiting the consideration of such evidence).

Third, while the presumption of regularity may be rebutted, the court rejects the arguments petitioner advances to support his claim that the AFCCA ignored his brief and supporting documents. Petitioner argues that the records custodian cannot account for the materials in the record. Petitioner makes citation to an affidavit from the custodian of the record of trial in this case that states she was "unable to locate" in the original record of trial a document described as "a motion filed with the Air Force Court of Criminal Appeals on 18 June 2008." Statement of Amanda M. Alvey, Doc. No. 10-2. This affidavit is somewhat unclear as to the object of the search. It does not cause the court to disbelieve the statement from the AFCCA that it considered the matters submitted by petitioner. We also note that petitioner's counsel stated that

11

the AFCCA granted petitioner's motions to file the reply out of time and to submit documents, and that the documents would be attached to the record.   Doc. No. 13-2 at 00205.   Petitioner's counsel also referred to the reply brief in arguing for review by the CAAF.

Petitioner further argues that the AFCCA could not have given full and fair consideration to his reply brief and supporting materials under the time constraints apparent in the record. Petitioner contends that the AFCCA accepted the brief and supporting documents on Friday, June 13, 2008 and denied the motion for reconsideration on Wednesday, June 18, 2008, allowing only three business days to consider the matters submitted by petitioner.   The court has reviewed petitioner's brief and materials.   The court does not believe that temporal restraints would have prevented a full and fair consideration of petitioner's reply brief and accompanying matters.

Petitioner further contends that his reply brief and supporting evidence provided a factual basis for his arguments which the AFCCA said was missing in its April 23, 2008 decision. Therefore, petitioner argues, the AFCCA must not have given full and fair consideration of the brief upon reconsideration in June 2008.   This argument seems to advocate a violation of the principles set forth in Burns which advise the court not to re-examine and reweigh evidence in connection with petitioner's

12

arguments.[2]  As the Tenth Circuit has made clear, even a summary denial of review may constitute full and fair consideration of a claim.  Lips, 997 F.2d at 821.  Simply because the AFCCA rejected petitioner's arguments and chose not to write a memorandum opinion to explain its reasoning, does not mean that it failed to give full and fair consideration to petitioner's reply brief before concluding that petitioner's arguments and evidence did not warrant changing the decision to affirm his convictions and sentence.

Nevertheless, the court shall initiate a contracted discussion of petitioner's issues in light of our review of the entire record.  Our review of the reply brief and the rest of the record indicates that a denial of relief was consistent with a full and fair consideration of the complete sum of petitioner's submissions.

Petitioner was recorded as he paid another person to kill his wife, discussed with that person how to proceed, and delivered photographs to aid the commission of the intended crime.  He decided to plead guilty and his guilty pleas were entered after a meticulous examination.  Given his occupation and training, it may be reasonably assumed that petitioner was well aware of his situation, the significance of his pleas, and the importance of his sworn statements.  The AFCCA noted this last point in its opinion

---

[2]We recognize that at this stage of his argument petitioner is contending, in essence, that the court should weigh the evidence to determine whether the military courts gave full and fair consideration to his claims, not whether the claims were correctly decided.  However, the analysis of those questions does overlap.

(2008 WL 1956589 at *4); of course the Supreme Court has noted it as well: "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Under these circumstances, it would not be unreasonable for a court to decide, after fully considering petitioner's reply brief and supporting materials, to deny relief to petitioner.

Such a court could reasonably determine that petitioner waived any pretrial speedy trial objection when he pleaded guilty as well as any claim of malicious prosecution and denial of fair trial.[3] As summarized by the Supreme Court:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not [competent].

Tollett v. Henderson, 411 U.S. 258, 267 (1973). See also Mabry v. Johnson, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

A court also could reasonably decide that petitioner made a

---

[3] These are the third, fourth and sixth claims raised in the petition for habeas relief.

knowing and voluntary plea with full knowledge of the possible maximum sentence and with knowledge that there was no mandatory minimum sentence.[4]  Petitioner makes a contention which is quite odd to this court.  He contends that he pleaded guilty because he believed there was a mandatory minimum life sentence in this case. Petitioner supposedly believed this even though the government stated for the purposes of petitioner's case that it would not advocate a mandatory minimum.  Also, the pretrial agreement was completely contrary to any notion of a mandatory minimum life sentence.  A person pleading guilty to a crime with a mandatory minimum life sentence would be sentenced to life in prison because it was <u>mandatory</u>.  Petitioner in this case knew his ultimate sentence would be no greater than eighteen years.  As he admits in his traverse, he had worked in a legal office in which there was a case with a similar charge and, contrary to the existence of a mandatory minimum life sentence, the sentence was eight years. Doc. No. 13 at p. 52.   It is unreasonable to believe that petitioner pleaded guilty thinking there was a mandatory minimum life sentence and that by pleading guilty he could avoid a mandatory minimum sentence without a specific agreement (not present here) that would somehow void the mandatory minimum.  What the record suggests is that petitioner's counsel told him that an

---

[4] The following discussion relates to the second and seventh issues in petitioner's § 2241 petition.

argument could be made (although it wasn't) that a mandatory minimum life sentence was applicable and that it was their advice that nothing be done to invite such an argument.  This is far different from being told that the maximum sentence was much larger or smaller than the law in fact required or that a mandatory minimum was lower than the law in fact required.  Those are situations which might influence a decision to plead guilty.  The court advised petitioner that there was no mandatory minimum prior to actually sentencing petitioner.  Petitioner could have withdrawn his plea at that time.  He did not do so, it is reasonable to assume, because the plea agreement and other statements of the parties were predicated upon a shared understanding that there was no mandatory minimum sentence.

Petitioner raises other contentions, without citation to authority, suggesting that his guilty plea was not knowing or voluntary because he was unaware of certain evidence or arguments which might support a claim of innocence.[5]  A reasonable court could reject these claims in light of petitioner's statements at the time of the guilty plea and the strong evidence of guilt in the record.  The Supreme Court, in U.S. v. Ruiz, 536 U.S. 622 (2002),

---

[5] For example, petitioner points to evidence that Ms. Greiner had a reputation for dishonesty, that Mr. Williams received some financial reward and help with traffic tickets, and that petitioner did not have the funds to make a substantial payment to Mr. Williams.  He refers to these points to suggest that his guilty plea was not knowing and voluntary and to argue that he received ineffective assistance of counsel.

provides additional support for rejecting petitioner's argument.
There, the Court held that the Constitution did not require the
government to disclose material impeachment evidence prior to
entering a plea agreement with a defendant, stating:

> [T]his Court has found that the Constitution, in respect
> to a defendant's awareness of relevant circumstances,
> does not require complete knowledge of the relevant
> circumstances, but permits a court to accept a guilty
> plea, with its accompanying waiver of various
> constitutional rights, despite various forms of
> misapprehension under which a defendant might labor. See
> Brady v. United States, 397 U.S. at 757 (defendant
> "misapprehended the quality of the State's case"); ibid.
> (defendant misapprehended "the likely penalties"); ibid.
> (defendant failed to "anticipate" a change in the law
> regarding relevant "punishment"); McMann v. Richardson,
> 397 U.S. 759, 770 (1970) (counsel "misjudged the
> admissibility" of a "confession"); United States v.
> Broce, 488 U.S. 563, 573 (1989) (counsel failed to point
> out a potential defense); Tollett v. Henderson, 411 U.S.
> 258, 267 (1973) (counsel failed to find a potential
> constitutional infirmity in grand jury proceedings).

536 U.S. at 630-31. Language from the above-cited Brady decision
also appears applicable to the case at bar:

> Often the decision to plead guilty is heavily
> influenced by the defendant's appraisal of the
> prosecution's case against him and by the apparent
> likelihood of securing leniency should a guilty plea be
> offered and accepted. Considerations like these
> frequently present imponderable questions for which there
> are no certain answers; judgments may be made that in the
> light of later events seem improvident, although they
> were perfectly sensible at the time. The rule that a
> plea must be intelligently made to be valid does not
> require that a plea be vulnerable to later attack if the
> defendant did not correctly assess every relevant factor
> entering into his decision. A defendant is not entitled
> to withdraw his plea merely because he discovers long
> after the plea has been accepted that his calculus
> misapprehended the quality of the State's case or the
> likely penalties attached to alternative courses of

action.

<u>Brady v. United States</u>, 397 U.S. 742, 756-57 (1970).

As for petitioner's claims of ineffective assistance of counsel, the military courts could have reasonably reviewed the record and decided that petitioner could not overcome the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." <u>Harrington v. Richter</u>, ---U.S. ----, 131 S.Ct. 770, 787 (2011) (interior quotations omitted). The courts could also have reasonably determined that petitioner could not demonstrate any error by his counsel which, given the very strong evidence of guilt, likely affected petitioner's decision to plead guilty or his ultimate sentence. A "'mere allegation that [a defendant] would have insisted on trial but for his trial counsel's errors, although necessary, is ultimately insufficient to entitle him to relief.'" <u>U.S. v. Clingman</u>, 288 F.3d 1183, 1186 (10th Cir. 2002) (quoting <u>Miller v. Champion</u>, 262 F.3d 1066, 1072 (10th Cir. 2001)). An examination of the factual circumstances surrounding the plea is necessary to decide whether an attorney's specific alleged mistake led a client to enter a plea of guilty the client otherwise would not have made. <u>Id</u>. There is no defense to the charges in this case which is so patent or obvious in the materials presented by petitioner that it persuades the court that the military courts ignored their responsibility to fully and fairly consider from the entire record whether petitioner

suffered any actual prejudice from his trial counsel's alleged
ineffective assistance.[6]   Similarly, the military courts could
reasonably have decided that petitioner failed in his burden to
establish "a reasonable probability" that a competent attorney in
petitioner's case would have presented evidence in a different
fashion such that there was a reasonable probability that a
different sentence would have been imposed.  See Wiggins v. Smith,
539 U.S. 510, 535-36 (2003) (discussing petitioner's burden).

A reasonable person could conclude after considering all of
petitioner's arguments and supporting materials that the AFCCA's

---

[6]For instance, the failure to file a meritorious speedy trial
objection is not necessarily incompetent performance.  U.S. v.
Rushin, 642 F.3d 1299, 1307-09 (10th Cir. 2011).   Petitioner's
arguments regarding how witnesses should have been cross-examined
in an emotional setting could reasonably be rejected as so much
second-guessing.  See Richie v. Mullin, 417 F.3d 1117, 1124 (10th
Cir. 2005) cert. denied, 547 U.S. 1045 (2006)("counsel's decisions
regarding how best to cross-examine witnesses presumptively arise
from sound trial strategy"); Kessler v. Cline, 335 Fed.Appx. 768,
770 (10th Cir. 2009)("the manner in which counsel cross-examines a
particular witness is a strategic choice and therefore virtually
unchallengeable")(interior quotations omitted).  In addition, the
AFCCA considered petitioner's Article 13 pretrial punishment claim
as an alleged aspect of ineffective assistance of counsel but
denied the claim largely because petitioner personally voiced his
waiver of such a claim during his sentencing hearing.  The court
expressly stated that it considered petitioner's post-trial
personal affidavits which listed "a host of perceived deficiencies
in his treatment while confined in the county jail, asserts that
such deficiencies warrant Article 13 credit, and argues that his
attorneys improperly refused to seek such credit."  2008 WL 1956989
at *7.  The materials in the reply brief are not much different
from those affidavits.  Thus, there are no good grounds to think
that the court denied relief to petitioner because it failed to
give full and fair consideration to the additional materials
contained in association with petitioner's reply brief.

Barker v. Wingo analysis of the post-trial delay in this case should not be modified.[7]  The Tenth Circuit has commented that the necessity of showing substantial prejudice dominates the Barker balancing test after a defendant has been convicted.  U.S. v. Yehling, 456 F.3d 1236, 1245-46 (10th Cir. 2006) (citing, Perez v. Sullivan, 793 F.2d 249, 256 (10th Cir. 1986)).  A reasonable court could conclude that petitioner failed to make a showing of substantial prejudice.  Given that the AFCCA found no errors in the proceedings which would require a rehearing and additional evidence, a reasonable court could easily find that petitioner could not demonstrate substantial prejudice from the alleged post-trial delay.

A reasonable court could also conclude that any error in the consideration of clemency was harmless.[8]  Petitioner has argued that in 2007 the Clemency Board failed to consider a letter written by petitioner's wife because the letter was withheld from the Clemency Board.  A reasonable court could conclude that consideration of the letter would not have caused the Clemency Board to modify an 18-year sentence approximately two years after the imposition of the sentence.  Indeed, petitioner admits that the letter was received as part of an application for clemency relief

---

[7] This discussion relates to the first issue listed in the habeas petition.

[8] This discussion relates to petitioner's fifth issue.

which was denied in 2006.  In addition, courts have concluded that military prisoners have no constitutional or fundamental right to clemency.  <u>Coder v. O'Brien</u>, 719 F.Supp.2d 655, 661 (W.D.Va. 2010). Courts have also found that a complete failure to respond to a request for clemency does not violate a due process right.  <u>Id</u>. at 662 (citing <u>Ward v. Province</u>, 283 Fed.Appx. 615, 617-18 (10th Cir. 2008) and <u>U.S. v. Bell</u>, 60 M.J. 682, 687 (N.M.Ct.Crim.App. 2004)). Given the time of the 2007 clemency request vis-a-vis the length of petitioner's sentence and the limited due process rights in this area, a reasonable person could conclude, after examining the entire record, that petitioner could not demonstrate that the denial of his 2007 clemency request was in violation of his post-trial due process rights.

Finally, petitioner contends that the military courts did not give full and fair consideration to his case because his appellate counsel made short arguments knowing that petitioner's <u>pro se</u> brief would fill in and elaborate upon his contentions.  Petitioner asserts that his counsel's "paltry submissions" cannot be viewed as a true briefing and arguing of his issues before the military courts and, therefore, his case did not receive full and fair consideration.  Doc. No. 13 at p. 20.  We reject this contention, first, because the court believes the AFCCA did give full and fair consideration to petitioner's <u>pro se</u> brief and materials, in addition to his appellate counsel's briefs.  Second, the court does

not find that petitioner's appellate counsel wrote inadequate
briefs.

C.  Summary of the four factors

For these reasons, the court concludes that the military
courts gave full and fair consideration to the factual record and
the legal issues presented in this case.  With the possible
exception of petitioner's Clemency Board claim, petitioner has
raised several issues of substantial constitutional dimension which
were determined by the military courts after a legal analysis mixed
with a consideration of the facts presented.  The military courts
gave adequate consideration to petitioner's arguments and applied
the proper legal standards.  The military courts were faced with
some issues for which there is a military component better
considered by a military court as opposed to a civilian court.  The
reasonableness of delays in the pretrial and post-trial phases of
this case involve judgments relating to the reasonableness of
requests for extensions of time in a military context.  Whether
petitioner's pretrial confinement conditions warranted sentencing
credit also involves military considerations.  After an analysis of
petitioner's arguments in light of the record and the four factors
the court must consider before deciding whether to reach the merits
of petitioner's claims, the court finds that the military courts
gave full and fair consideration to petitioner's claims.

22

V.   CONCLUSION

For the above-stated reasons, the petition for relief under 28 U.S.C. § 2241 must be denied.

**IT IS SO ORDERED.**

Dated this 16th day of August, 2011 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge